Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| BRETT S. JOHNSON, CHRISTINA K. JOHNSON Y OTROS<br><br>Recurridos<br><br>v.<br><br>AURELIO RUIZ LUCIANO, MARITZA I. FLORES GONZÁLEZ Y OTROS<br><br>Peticionarios | KLCE202400334 | Recurso de *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm. GB2021CV00445<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Marrero Guerrero, Juez ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de abril de 2024.

Comparecen Aurelio Ruiz Luciano (señor Ruiz Luciano), Maritza I. Flores González y la Sociedad de Bienes Gananciales, compuesta por ambos (peticionarios), y solicitan que revoquemos la *Resolución y Orden Enmendada Nunc Pro Tunc* emitida el 16 de febrero de 2024 por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI), notificada y archivada en autos el 21 de febrero de 2024.[1] Mediante el referido dictamen, el foro primario declaró con lugar la *Moción Urgente para Solicitar Remedios Provisionales al Amparo de la Regla 56 de Procedimiento Civil de 2009 y en Solicitud de Vista* presentada por Brett S. Johnson (señor Johnson) y Christina K. Johnson (en conjunto, recurridos) ordenando así la prohibición de enajenar el inmueble de los peticionarios y la prestación de una fianza por la suma de $2,500.00 por parte de los recurridos dentro de un término de diez (10) días.[2]

---

[1] Apéndice de la Petición de *Certiorari*, Anejo 40, págs. 253-263.
[2] *Íd.*, Anejo 5, págs. 16-22.

Por las razones que expondremos a continuación, denegamos expedir el auto solicitado.

**-I-**

El caso ante nuestra consideración tiene su génesis el 2 de julio de 2021 cuando los recurridos presentaron una *Demanda* en contra de los peticionarios alegando incumplimiento de contrato en reclamo del cumplimiento específico de lo acordado entre los recurridos y los peticionarios, mediante un escrito titulado "Letter of Intent (LOI)";[3] a saber, que los peticionarios le vendan a los recurridos el inmueble localizado en la Calle 1 #602, Urbanización Tintillo en Guaynabo, P.R., 00966 por la suma de $750,000.00 con una fecha de cierre de ciento veinte (120) días.[4] Además, los recurridos solicitaron que los peticionarios le entreguen la referida propiedad al momento del cierre, que el foro primario ordene a los peticionarios a compensarles por los alegados daños causados a estos, y condene a los peticionarios al pago de costas y honorarios de abogados. Según arguyeron los recurridos, el 21 de abril de 2021, los peticionarios le comunicaron por escrito a los recurridos que aceptaban la oferta presentada por el señor Johnson por la suma de $750,000.00 para la compra de la propiedad en cuestión "as is". Posteriormente, el 23 de abril de 2021, las partes suscribieron el "Letter of Intent (LOI)" y el 13 de mayo de 2021, los peticionarios, por medio de su corredor, cursaron a los recurridos un borrador de contrato de compraventa pretendiendo variar lo pactado en el "Letter of Intent (LOI)", el cual establecía unos términos y condiciones para la compra y venta de la propiedad. Según se alegó, desde ese momento, los peticionarios comenzaron una conducta contraria a la buena fe. Los peticionarios continuaron retrasando la firma del contrato de compraventa hasta que finalmente, el 23 de junio

---

[3] *Íd.*, Anejo 17, págs. 48-50.
[4] *Íd.*, Anejo 1, págs. 1-4.

de 2021, alegaron que no estaban en posición de formalizar el contrato de compraventa y notificaron que no iban a formalizar el mismo.

El 16 de septiembre de 2021, los peticionarios presentaron una *Contestación a Demanda*, mediante la cual admitieron que hubo un precontrato encaminado a negociaciones de buena fe conducente a la firma de un contrato de compraventa, pero negaron que se hayan obligado a vender la propiedad con la mera firma del "Letter of Intent (LOI)" por no haberse perfeccionado un contrato entre las partes.[5]

El 18 de septiembre de 2023, los recurridos presentaron una *Moción Urgente para Solicitar Remedios Provisionales al Amparo de la Regla 56 de Procedimiento Civil de 2009 y en Solicitud de Vista* solicitando la celebración de una vista evidenciaria, al amparo de la Regla 56.4 de Procedimiento Civil, *supra*, R. 56.4, y luego de esta, ordene la prohibición de enajenar el inmueble en cuestión con una orden para anotar una prohibición de enajenar dicha propiedad en el Registro de la Propiedad.[6] Lo anterior, pues, según alegaron los recurridos, estos recibieron información de que los peticionarios tenían la intención o estaban en el proceso de poner el inmueble a la venta por si por casi el doble del precio pactado entre las partes.

El 4 de octubre de 2023, los peticionarios presentaron una *Moción Informativa Urgente sobre Hogar Seguro en cuanto a Vista al amparo de la Regla 56 de Procedimiento Civil y Solicitud de Remedios* por la cuales les informó al foro primario de que el inmueble en cuestión constituye la residencia principal de estos designada como hogar seguro, a tenor con la *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar*, Ley Núm. 195 del 13 de septiembre de 2011 (Ley Núm. 195-2011), según enmendada, 31 LPRA secs. 1858 *et seq.*, y que, por ello, los recurridos están impedidos de obtener un remedio provisional en aseguramiento de sentencia sobre el aludido

---

[5] *Íd.*, Anejo 2, págs. 5-13.
[6] *Íd.*, Anejo 5, págs. 16-22.

inmueble.[7] Además, alegaron que, conforme al Artículo 1157 del Código Civil del 2020, 31 LPRA sec. 9302, el derecho de seguro es inembargable.

El 5 de octubre de 2023, los recurridos presentaron una *Oposición a Moción Informativa Urgente sobre Hogar Seguro en cuanto a Vista al Amparo de la Regla 56 de Procedimiento Civil y Solicitud de Remedios (SUMAC doc. 39)*.[8] Mediante esta, los recurridos expresaron que los argumentos de los peticionarios eran totalmente impertinentes, pues están dirigidos a establecer que no procede el embargo, no la prohibición de enajenar, de una propiedad designada como hogar seguro, a tenor con la Ley Núm. 195-2011, *supra*.

El 10 de octubre de 2023, los peticionarios presentaron una *Moción en Oposición a Moción Urgente para Solicitar Remedios Provisionales al Amparo de la Regla 56* por la cual reiteraron que los recurridos están vedados de obtener un remedio de carácter provisional en aseguramiento de sentencia sobre el inmueble al disfrutar de las protecciones que le confiere la Ley Núm. 195-2011, *supra*.[9] Además, según arguyeron los peticionarios, el Tribunal debía considerar como asunto de umbral la probabilidad de los recurridos de prevalecer para luego determinar si la sentencia puede ser asegurada y ejecutada en contra del hogar seguro de los peticionarios, y que, al prohibir la enajenación en aseguramiento de sentencia, ello cerraría la entrada de cualquier acto jurídico en el Registro de la Propiedad afectando así el derecho de titularidad y dominio de los peticionarios.

El 27 de octubre de 2023, el TPI emitió una *Resolución y Orden* por la cual, a petición de los peticionarios, se recalendarizó la continuación de la vista evidenciaria.[10] El foro primario también

---

[7] *Íd.*, Anejo 10, págs. 29-34.
[8] *Íd.*, Anejo 12, págs. 36-37.
[9] *Íd.*, Anejo 13, págs. 38-41.
[10] *Íd.*, Anejo 24, págs. 84-85.

ordenó a los peticionarios a abstenerse de vender o de otra forma disponer de la propiedad objeto de este litigio hasta culminada y adjudicada la vista evidenciaria como medida cautelar.

El 5 de diciembre de 2023, el TPI emitió una *Minuta* sobre, en lo pertinente, la continuación de la vista evidenciaria celebrada e informó que estaría evaluando las argumentaciones y la prueba presentada para determinar si expide la orden sobre remedios provisionales, a tenor con la Regla 56 de Procedimiento Civil, *supra*, R. 56.[11]

El 27 de noviembre de 2023, los peticionarios presentaron una *Moción de Desestimación al Amparo de la Regla 10.2 de Procedimiento Civil y/o Sentencia Sumaria* por la cual solicitaron la desestimación de la demanda de autos y que se dicte una sentencia sumaria, conforme a la Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, y la Regla 36 de Procedimiento Civil, *supra*, R. 36, respectivamente, por no existir controversia respecto a los hechos esenciales y pertinentes, ni justa causa que justifique la concesión del remedio solicitado por los recurridos.[12]

El 11 de diciembre de 2023, los recurridos presentaron una *Moción en Oposición a Moción de Desestimación al Amparo de la Regla 10.2 de Procedimiento Civil y/o Sentencia Sumaria presentada por la Parte Demandante (SUMAC doc. 66); y para que se dicte Sentencia Sumaria Parcial a favor de la Demandante* arguyendo, en parte que, como los peticionarios contestaron demanda, están vedados de presentar una solicitud de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, y tampoco puede ser utilizada para refutar alegaciones de la demanda, pues mediante una solicitud de desestimación bajo dicha regla requiere tomar como ciertas todas las alegaciones de la demanda.[13] Los recurridos también arguyeron que

---

[11] *Íd.*, Anejo 25, págs. 86-87.
[12] *Íd.*, Anejo 26, págs. 88-110.
[13] *Íd.*, Anejo 27, págs. 111-185.

procede dictar una petición de sentencia sumaria parcial a favor de ellos ya que los hechos incontrovertidos establecen que los peticionarios incumplieron con el contrato de promesa bilateral de compraventa pactado entre las partes. Por lo anterior, según arguyen los recurridos, procede ordenar su cumplimiento específico, requiriéndole así a los peticionarios a venderles a los recurridos el inmueble por la suma de $75,000.00, restando así solo el reclamo de daños.

El 12 de diciembre de 2023, los recurridos presentaron una *Moción [Enmendada] en Oposición a Moción de Desestimación al Amparo de la Regla 10.2 de Procedimiento Civil y/o Sentencia Sumaria presentada por la Parte Demandante (SUMAC doc. 66); y para que se dicte Sentencia Sumaria Parcial a favor de la Demandante* solo a los efectos de enmendar errores ortográficos.[14]

El 19 de diciembre de 2023, el foro primario emitió una *Resolución y Orden*, notificada y archivada en autos el 21 de diciembre de 2023, por la cual determinó que la prueba estableció que los recurridos hicieron una oferta que fue aceptada por los peticionarios; un acuerdo de vender una propiedad específica por $750,000.00; y una aceptación que luego fue retirada.[15] Sin embargo, el foro primario determinó que será objeto de juicio si lo anterior constituyó una promesa bilateral de compraventa porque las partes acordaron en el negocio la cosa y el precio de $750,000.00, restando formalizar el contrato de compraventa. Además, el foro primario determinó que los recurridos probaron que ostentan probabilidad de prevalecer respecto al contrato de promesa bilateral de compraventa y su incumplimiento por los peticionarios. Por lo tanto, declaró con lugar la *Moción Urgente para Solicitar Remedios Provisionales al Amparo de la Regla 56 de Procedimiento Civil de 2009 y en Solicitud de Vista,* ordenando la

---

[14] *Íd.*, Anejo 28, págs. 186-209.
[15] *Íd.*, Anejo 31, págs. 214-224.

prohibición de enajenar el inmueble objeto del presente litigio, y ordenó a los recurridos a prestar una fianza por la suma de $2,500.00.

El 4 de enero de 2024, los peticionarios presentaron una *Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales* por la cual, arguyeron, en parte que, la cuantía prestada por los recurridos por la cantidad de $2,500.00 es irrazonable e insuficiente para responder por todos los daños y perjuicios que puedan sufrir los peticionarios a consecuencia del remedio en aseguramiento de sentencia.[16] Lo anterior pues el precio de venta del inmueble pactado por las partes fue $750,000.00 y el precio de venta sugerido era más de $1.5 millones. Además, según sostuvieron los peticionarios, el "Letter of Intent (LOI)" incluye el párrafo 10 que establece, "*If the Purchase Agreement is not mutually executed within the Contract Negotiation Period for any reason whatsoever or no reason at all, this Letter of Intent shall expire and no party shall have any further rights or duties hereunder. Seller shall not solicit other offers during the Contract Negotiation Period.*" Por lo tanto, arguyeron los peticionarios que, dicha cláusula le permite a cualquiera de las partes salirse de la obligación de comprar o vender e inmueble, por cualquier razón o sin ninguna razón, sin ningún otro derecho u obligación, relevadas ambas partes de todas las obligaciones contraídas bajo dicho documento. Ante ello y los acuerdos incluidos en el referido "Letter of Intent (LOI)", los peticionarios solicitaron una solicitud de sentencia sumaria a su favor.

El 23 de enero de 2024, los recurridos presentaron una *Oposición a Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales (SUMAC doc. 76),* por la cual sostuvieron que solamente se pueden solicitar determinaciones de hechos adicionales cuando se dicta una sentencia y no una resolución y orden.[17] También

---

[16] *Íd.,* Anejo 32, págs. 225-230.
[17] *Íd.,* Anejo 34, págs. 234-243.

alegaron que lo alegado en cuanto a la fianza es contrario a la prueba, pues el señor Ruiz Luciano testificó que no tenía interés en vender la propiedad en cuestión, los recurridos demostraron una probabilidad de prevalecer, y que la prueba estableció la ausencia de una opinión de valor por el tasador, por lo que el argumento de los peticionarios resulta especulativo y desvinculado del récord. Además, los recurridos arguyeron que, a tenor con el derecho, los peticionarios no pueden utilizar la designación de hogar seguro como un escudo para incumplir con lo pactado en un contrato de promesa bilateral de compraventa y evitar que se concedan los remedios que proceden en derecho como cumplimiento específico. Por último, alegaron que la aludida moción está reñida de doctrinas de actos propios y abuso del derecho.

El 16 de febrero de 2024, el foro primario emitió una *Resolución*, notificada y archivada en autos el 21 de febrero de 2024, por la cual denegó la *Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales*.[18]

El 16 de febrero de 2024, el foro a quo emitió su *Resolución y Orden Enmendada Nunc Pro Tunc*, notificada y archivada en autos el 21 de febrero de 2024.[19]

Inconformes, el 20 de marzo de 2024, los peticionarios acudieron ante nos mediante el presente recurso de *certiorari*, en el cual le atribuyeron al TPI la comisión de los siguientes errores:

> **Erró el TPI al dictar una orden de prohibición de enajenar bajo la Regla 56 de Procedimiento Civil de Puerto Rico sobre la propiedad residencial de los demandados recurrentes a pesar de que la misma está protegida por la Ley 195 de Hogar Seguro y no se puede ejecutar contra esa propiedad ninguna sentencia que se pueda obtener en el futuro, pero además incumplió el TPI con los criterios señalados por la Jurisprudencia para que se pueda conceder algunos de los remedios provistos por la Regla 56.1 de Procedimiento Civil.**

> **Erró el TPI al imponer a los demandantes una fianza irrazonablemente baja de $2,500.00 al prohibir la**

---

[18] *Íd.*, Anejo 38, págs. 250-251; *Íd.*, Anejo 39, págs. 252.
[19] *Íd.*, Anejo 40, págs. 253-263.

**venta de una propiedad inmueble cuyo valor mínimo es de $750,000.00 y un valor máximo de $1,500,000.00 según testimonio en corte de la corredora Aileen Beale por lo que, de prevalecer la parte demandada recurrente, lo cual es probable, sus daños podrían ser enormes, los cuales no estarían cubiertos por la irrisoria cantidad de $2,500.00 en fianza. El planteamiento de este error no implica que aceptemos la validez de la orden de prohibición de enajenar.**

**Erró el TPI al determinar que era la parte demandante la que tenía la probabilidad de prevalecer haciendo caso omiso a lo que dispone el "Letter of Intent" o "Carta de Intención" documento principal que recoge los acuerdos entre las partes y que demuestra sin lugar a dudas que son los demandados los que tienen la mayor probabilidad de prevalecer de conformidad a lo que dispone la primera oración de dicho documento así como el párrafo 10 del mismo.**

En síntesis, los peticionarios solicitan la revocación de la *Resolución y Orden Enmendada Nunc Pro Tunc.* Mediante el recurso de *certiorari*, estos plantean que la interpretación realizada por el foro primario en cuanto a que el Artículo 5 de la Ley Núm. 195-2011, *supra,* sec. 1858b solo se refiere al embargo y no incluye la prohibición de enajenar es una restrictiva y no toma en cuenta el espíritu de la ley. Además, plantean que la fianza de $2,500.00 es irrisoria e irrazonable, y el "Letter of Intent (LOI)" no es un precontrato de promesa bilateral de compraventa. Por lo tanto, alegan que tienen mayor probabilidad de prevalecer y el foro primario no debió dictar una orden de prohibición de enajenar su propiedad.

Por su parte, el 5 de abril de 2024, los recurridos presentaron una *Moción de Desestimación y/o Alegato de la Parte Recurrida en Oposición en Cumplimiento con Resolución* por la cual plantean nuevamente que la designación de hogar seguro no puede ser utilizada como escudo para incumplir con lo pactado en su contrato de promesa bilateral de compraventa y evitar que se concedan los remedios que proceden en derecho como el cumplimiento específico. Además, sostienen que la fianza es suficiente porque los recurridos demostraron una probabilidad de prevalecer en los méritos y ante el

alegado precio de venta sugerido de $1.5 millones por la propiedad, los recurridos arguyen que del récord de la vista evidenciaria no surge la opinión de un tasador. Por último, los recurridos alegan que la prueba desfilada en la vista evidenciaria estableció todas las alegaciones de la demanda y que la posición de los peticionarios está reñida por las doctrinas de actos propios y abuso del derecho.

**-II-**

**-A-**

El *certiorari* es un recurso extraordinario cuya característica se asienta en la sana discreción confiada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65; *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Este Tribunal tiene la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del TPI. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). En los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1; *McNeil Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019). La Regla 52.1 de Procedimiento Civil, *supra*, dispone que sólo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo". *800 Ponce de León v. AIJ, supra*, pág. 175. Además, nos corresponde evaluar las disposiciones de la Regla 40 del Reglamento de este Tribunal, 4 LPRA Ap. XXII, R. 40, las cuales constituyen los criterios que debemos evaluar para determinar si procede ejercer nuestra facultad discrecional y, por ende, expedir el recurso de *certiorari*:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

De no estar presente algunos de estos criterios, corresponde abstenernos de expedir el auto de *certiorari.*

**-B-**

La Regla 56 de Procedimiento Civil, *supra*, establece los remedios provisionales que un demandante puede solicitar para asegurar la efectividad de una sentencia que ha obtenido a su favor o anticipa obtener. *Banco Popular de Puerto Rico v. Gómez Alayón*, 2023 TSPR 145; *Scotiabank de Puerto Rico v. ZAF Corporation*, *supra*, pág. 487; *Citibank v. ACBI*, 200 DPR 724, 731 (2018); *Cacho Pérez v. Hatton Gotay*, 195 DPR 1 (2016). Para ello, antes o después de la sentencia, la parte reclamante podrá solicitarle al tribunal mediante moción aquel remedio que sea necesario para asegurar la efectividad de la sentencia. Véase, Regla 56.1 de Procedimiento Civil, *supra*, R. 56.1; *Citibank v. ACBI, supra*, pág. 731. En otras palabras, el remedio provisional tiene como propósito asegurar que el demandante pueda satisfacer su acreencia. *Scotiabank de Puerto Rico v. ZAF Corporation*, *supra*, págs. 487-488. Entre las medidas provisionales disponibles están "el embargo, el embargo de fondos en posesión de un tercero, la

prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. . .". Véase, Regla 56.1 de Procedimiento Civil, *supra*; véase, además, *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, pág. 488; *Citibank v. ACBI, supra,* págs. 731-732; *Nieves Díaz v. González Massas*, 178 DPR 820, 840 (2010). En cuanto a la prohibición de enajenar la Regla 56.4 de Procedimiento Civil, *supra*, dispone lo siguiente:

> En el caso de bienes inmuebles, tanto el embargo como la prohibición de enajenar se efectuarán anotándolos en el registro de la propiedad y notificándolos a la parte demandada. En el caso de bienes muebles, la orden se efectuará depositando los bienes de que se trate con el tribunal o con la persona designada por el tribunal bajo la responsabilidad de la parte reclamante. El tribunal podrá ordenar, a petición de cualquiera de las partes, la venta en pública subasta de los bienes fungibles cuyo embargo o prohibición de enajenar se haya decretado, consignándose el producto de su venta en la forma dispuesta por el tribunal.
>
> . . . .

La lista anterior, no obstante, no es taxativa, pues el tribunal tiene discreción de ordenar cualquier otra medida que estime apropiada. *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, pág. 489; *Citibank v. ACBI, supra,* pág. 732. Por lo tanto, "cuando un tribunal tiene ante su consideración una solicitud de remedio provisional en aseguramiento de sentencia, las disposiciones aplicables se deben interpretar con amplitud y liberalidad, concediendo el remedio que mejor asegure la reclamación y que menos inconvenientes ocasione al demandado". *Citibank v. ACBI, supra,* pág. 732.

Asimismo, el tribunal tiene discreción para conceder o denegar el remedio provisional. *Scotiabank de Puerto Rico v. ZAF Corporation, supra*, pág. 488; *Citibank v. ACBI, supra,* pág. 732; *Nieves Díaz v. González Massas, supra,* pág. 839. Al momento de conceder los

remedios provisionales, el tribunal tomará en cuenta varios criterios; a saber: (1) que sean provisionales; (2) tengan el propósito de asegurar la efectividad de la sentencia que en su día se pueda dictar y (3) se tomen en consideración los intereses de todas las partes, según lo requiera la justicia sustancial y las circunstancias del caso. *Citibank v. ACBI, supra*, pág. 733; *Nieves Díaz v. González Massas, supra*, págs. 839-840. A su vez, la única limitación que tiene el tribunal es que la medida sea una razonable y adecuada para asegurar la efectividad de la sentencia. *Citibank v. ACBI, supra*, pág. 733; véase, además, *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.*, 173 DPR 304, 315 (2008).

Como regla general, se requiere la prestación de una fianza por parte de la persona que solicite un remedio provisional en aseguramiento de sentencia para responder por los daños y perjuicios que puedan surgir a consecuencia del aseguramiento. *Nieves Díaz v. González Massas, supra*, pág. 840. Según la Regla 56.3 de Procedimiento Civil, *supra*, "[e]n todos los casos en que se exija una fianza bajo esta regla, el tribunal exigirá la prestación de una fianza suficiente para responder por todos los daños y perjuicios que se causen como consecuencia del aseguramiento"; véase, además, *Citibank v. ACBI, supra,* pág. 734; R. Hernández Colón, *Derecho Procesal Civil,* 6ta ed. rev., San Juan, Ed. Lexis Nexis, 2017, pág. 197. Además, "[a]l fijarse el monto de la fianza para trabar un embargo en aseguramiento de sentencia, debe tenerse en cuenta que su cuantía no sea de tal naturaleza prohibitiva que frustre el propósito del demandante de asegurar la efectividad de la sentencia que en su día pueda recaer". *Hernández Colón, op. cit., pág. 197*; *Soc. de Gananciales v. Rodríguez*, 116 DPR 468, 471 (1985). Según el tratadista puertorriqueño Rafael Hernández Colón, los factores principales para determinar el monto de la fianza requerida para un embargo en aseguramiento de sentencia son:

(1) la utilidad que el bien a embargarse sirve al demandado; (2) la solidez de los argumentos o de la reclamación del demandante; (3) si el aseguramiento solicitado es el menos oneroso para garantizar la efectividad de la sentencia que pueda recaer; y (4) los posibles daños que se causarían al demandado. *Hernández Colón, op. cit., págs. 197-198.* Véase, además, *Soc. de Gananciales v. Rodríguez, supra.*

En los casos donde se ha ordenado la prohibición de enajenar, tal como en el caso de marras, su dueño queda afectado de inmediato en relación con cualquier posible negociación a base de dicho inmueble. *Soc. de Gananciales v. Rodríguez, supra*, págs. 472-473. Queda claro, no obstante que, si bien es natural anticipar que surjan daños, es difícil determinar la suficiencia de la cuantía de esa fianza. Íd., pág. 471. Para ello, sin embargo, nuestro máximo foro ha determinado que, en casos de embargos, por ejemplo, la cuantía de la fianza siempre estaría sujeta a cambio, del demandado demostrar que el daño que el mantenimiento del embargo le causa excede el importe de esa fianza. Íd., pág. 473.

Aun así, existen excepciones a la prestación de fianza; a saber:

(1) cuando la obligación es legalmente exigible y así surge de un documento público o privado otorgado ante una persona autorizada a tomar juramentos; (2) cuando se trata de un litigante insolvente que reúne las condiciones expresadas en la Regla 56.3 de Procedimiento Civil, *supra,* o (3) cuando se gestiona el remedio después de la sentencia. Esta última excepción descansa en la presunción de corrección de que gozan las sentencias en nuestra jurisdicción. *Nieves Díaz v. González Massas, supra,* pág. 840; véase, además, *Cacho Pérez v. Hatton Gotay, supra.*

Por otra parte, existen otros requisitos para la concesión de un remedio provisional tal como notificar la solicitud a la parte contraria y celebrar una vista de remedios provisionales previo a concederlo. Véase, Regla 56.2 de Procedimiento Civil, *supra*, R. 56.2; *Citibank v. ACBI, supra*, pág. 734. Solamente se exime del requisito de celebrar una vista cuando esté presente una de las circunstancias establecidas en la Regla 56.4 de Procedimiento Civil, *supra*, y la Regla 56.5 de Procedimiento Civil, *supra*, R. 56.5.

**-C-**

Según se desprende de la Exposición de Motivos de la Ley Núm. 195-2011, *supra*, "[l]a protección de 'hogar seguro' tiene como finalidad que cada ciudadano propietario cuente con una protección básica ante el riesgo de ejecución de una sentencia en contra de su residencia". Véase, además, *Money's People Inc. v. López Julia*, 202 DPR 889, 902 (2019). Sin embargo, dicha protección económica se dirige exclusivamente para proteger el aludido derecho de aquellas ventas promovidas por acreedores en virtud de sentencia o ejecución. Ahora bien, el Artículo 5 de la Ley Núm. 195-2011, *supra*, expresamente establece que el derecho a hogar seguro protege a la propiedad "de embargo, sentencia o ejecución ejercitada para el pago de todas las deudas, excepto las deudas reconocidas como excepciones en el Artículo 4 de esta Ley". véase, además, *Money's People Inc. v. López Julia, supra*, pág. 904. A tenor con ello, toda persona o jefe de familia domiciliado en la isla:

> [T]endrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios, o una residencia edificada bajo el derecho de superficie, que le pertenezca o posea legalmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal.
>
> . . . . Véase, Artículo 3 de la Ley Núm. 195-2011, *supra*, sec. 1858; véase, además, *In re Santiago Maldonado*, 206 DPR 1029, 1044 (2021); *Money's People Inc. v. López Julia, supra*, pág. 904.

Asimismo, el Artículo 1157 del Código Civil del 2020, *supra*, establece que el derecho a hogar seguro es inembargable. Además, como norma general, el derecho a hogar seguro es irrenunciable y se declarará nulo cualquier pacto en contrario. Véase, Artículo 4 de la Ley Núm. 195-2011, *supra*, sec. 1858a. No obstante, el derecho a hogar seguro será renunciable en todos los casos donde se obtenga una hipoteca que grave la propiedad cobijada por el derecho a hogar seguro; en los casos de cobro de contribuciones estatales y federales;

en los casos donde se les deba a los contratistas pagos para reparaciones de la propiedad protegida; en aquellos casos donde la persona reclamante, previo al derecho de hogar seguro, prefiera reclamar en una petición a tenor con el Código de Quiebras Federal, 11 U.S.C. secs. 101 *et seq.*, en lugar de exenciones locales y la de hogar seguro; y en todos los casos de préstamos, hipotecas, contratos refaccionarios y pagarés constituidos a favor de o asegurados u otorgados por las entidades allí mencionadas. Véase, Artículo 4 de la Ley Núm. 195-2011, *supra*, sec. 1858a.

Por otro lado, al Artículo 8 de la Ley Núm. 195-2011, *supra*, sec. 1858e, establece que cuando se venda la propiedad cobijada por hogar seguro, el dueño tendrá un plazo de nueve (9) meses, desde la venta para invertir el dinero recibido en otra propiedad localizada en Puerto Rico y para que esta constituya su nuevo hogar seguro. En otras palabras, el dinero recibido por la antigua propiedad estará protegido de los acreedores durante esos nueve (9) meses. De igual modo, en donde se adquiera una propiedad de menor cuantía, la diferencia en dinero no estará protegida por las disposiciones de esta Ley.

**-D-**

El contrato de opción es un tipo de precontrato o contrato preparatorio encaminado al otorgamiento de un contrato de compraventa. *S.L.G. Irizzary v. S.L.G. García*, 155 DPR 713, 722 (2001). Las normas de este tipo de contrato, no obstante, no estaban delineadas en el Código Civil del 1930, 31 LPRA secs. 1 *et seq.* (derogado). *Matos González v. SLG Rivera-Freytes*, 181 DPR 835, 841 (2011). Dado a ello nuestro máximo foro definió el contrato de opción como "el 'convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal'". *Matos González v. SLG Rivera-Freytes*,

*supra*, pág. 841 (*citando a P.D.C.M. Assoc v. Naul Bez*, 174 DPR 716, 724 (2008)); véase, además, *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002); *S.L.G. Irizarry v. S.L.G. García, supra.* Los elementos esenciales de este tipo de contrato son (1) concederle al optante la facultad de decidir unilateralmente si celebrará un contrato principal de compraventa sin ninguna obligación por parte de este; (2) esta concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción; y (4) no existe otra condición que no sea la voluntad del optante. *S.L.G. Irizarry v. S.L.G. García, supra.* En otras palabras, mediante el referido contrato, el optante ostenta la facultad de determinar durante el plazo concedido, si se perfecciona el contrato por el cual optó. *Matos González v. SLG Rivera-Freytes, supra*, pág. 841. Además, cuando se trata de una opción de compraventa, el optatario tiene un deber de cuidar la propiedad y mantenerla fuera del mercado para que ningún tercero pueda obtenerla. *Matos González v. SLG Rivera-Freytes, supra*, pág. 841. Sin embargo, la opción de compraventa es un contrato unilateral, pues el optante no está obligado a comprar, mas el optatario está obligado a venderle al primero, si aquel así lo decide. *S.L.G. Irizarry v. S.L.G. García, supra*, pág. 722.

Posteriormente, se adoptó la figura del contrato preliminar o de opción mediante el Artículo 1235 del Código Civil de 2020, 31 LPRA sec. 9756. Por medio de la Exposición de Motivos del Código Civil de 2020, *supra*, queda claro la intención legislativa de requerirle al optatario la celebración de un contrato futuro, si así lo decide el optante mediante el contrato preliminar:

> Se regula la figura del contrato preliminar, también conocido como contrato preparatorio, precontrato o promesa de contrato. En el contrato preliminar, las partes se obligan a celebrar un contrato futuro. El contrato preliminar se denomina opción si le atribuye decidir a una sola de las partes, la celebración del contrato futuro. Las partes quedan obligadas por la buena fe a colaborar, proporcionar información

relevante, mantener la confidencialidad y conservar el bien.

. . . .

Asimismo, lo recoge el Artículo 1235 del Código Civil de 2020, *supra*:

> Por el contrato preliminar las partes se obligan a celebrar un contrato futuro. El contrato preliminar se denomina Opción si le atribuye a una sola de las partes la facultad de decidir sobre la celebración del contrato futuro.
>
> El contrato preliminar no está sujeto a cumplir las formalidades que debe satisfacer el contrato futuro.
>
> Si la parte requerida se niega al otorgamiento del nuevo contrato, el tribunal puede exigir a la misma estricto cumplimiento.

Igualmente, la opción de compra es el derecho que "faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado". Véase, Artículo 1029 del Código Civil de 2020, *supra*, sec. 8821. Además, el Artículo 1030 del Código Civil de 2020, *Íd.*, sec. 8822, establece los requisitos del título de constitución de una opción de compra:

> [A]demás de las estipulaciones y del domicilio a efectos de las notificaciones preceptivas y demás pactos que el constituyente o los constituyentes tengan por conveniente, debe contener, como mínimo, los siguientes requisitos:
> **(a)** el plazo de duración del derecho y, si procede, el plazo para su ejercicio;
> **(b)** en su caso, la voluntad del constituyente o de los constituyentes de configurar el derecho con carácter real;
> **(c)** el precio o contraprestación para la adquisición del bien o los criterios para su fijación, cuando se trate de un derecho de opción a una adquisición onerosa, indicando el precio estipulado para su adquisición. Cuando se prevean cláusulas de estabilización, deben contener criterios objetivos y el precio debe poder fijarse con una simple operación aritmética; y
> **(d)** la prima pactada para su constitución, cuando el derecho se constituye a título oneroso, indicando el precio convenido.
>
> Los contratos de opción de compra se pueden inscribir cuando cumplan con los requisitos anteriores y consten en escritura pública. (Énfasis en el original).

Cónsono con lo anterior, el optante puede ejercer su derecho de opción notificando al optatario su voluntad de perfeccionar el convenio. *Matos González v. SLG Rivera-Freytes, supra*, pág. 842; *Mayagüez Hilton Corp. v. Betancourt, supra*, pág. 249. Si se ejerce la opción en el plazo acordado, el contrato de opción se extingue y se perfecciona el contrato aceptado según delimitado anteriormente. *Matos González v. SLG Rivera-Freytes, supra*, pág. 842; *Mayagüez Hilton Corp. v. Betancourt, supra*, pág. 249. Desde ese momento, las partes están obligadas a satisfacer sus respectivas prestaciones por medio del contrato definitivo. *Matos González v. SLG Rivera-Freytes, supra*, pág. 842.

Además, como materia de contratos, por medio del contrato de opción se podrán diseñar los convenios que atiendan adecuadamente las necesidades e intereses, siempre que no violen la ley, la moral ni el orden público. Véase, Artículo 1232 del Código Civil 2020, *supra*, sec. 9753; *Matos González v. SLG Rivera-Freytes, supra*, pág. 844. Asimismo, una vez las partes prestan su consentimiento, quedan vinculadas por los términos del contrato, siendo este la ley entre las partes. *Matos González v. SLG Rivera-Freytes, supra*, pág. 843.

**-III-**

En el caso ante nuestra consideración, los peticionarios fundamentan su solicitud en que el espíritu de la Ley Núm. 195-2011, *supra*, es proteger el hogar principal y familiar contra cualquier orden para asegurar la efectividad de la sentencia siendo la prohibición de enajenar una de esas órdenes, al amparo de la Regla 56 de Procedimiento Civil, *supra*, y, por lo tanto, la interpretación realizada por el foro primario es restrictiva al establecer que el Artículo 5 de la Ley Núm. 195-2011, *supra*, no incluye la prohibición de enajenar. Además, argumentan que la fianza de $2,500.00 es irrisoria e

irrazonable considerando el supuesto de que aparezca otro comprador dispuesto a ofrecerles a los peticionarios $1 millón o $1.5 millones y no se la pueda vender por la anotación de prohibición de enajenar; los recurridos están dispuestos a pagar $750,000.00 por la propiedad, y el precio de venta sugerido es de hasta $1.5 millones. Los peticionarios también sostienen que tienen mayor probabilidad de prevalecer y, por ende, el foro primario no debió dictar una orden de prohibición de enajenar, ya que el "Letter of Intent (LOI)" no es un precontrato de promesa bilateral de compraventa y las partes acordaron mediante el párrafo 10 de la aludida carta que ellos podían salirse del mismo y terminar las negociaciones por cualquier razón o sin ninguna razón. Tal y como se consignó, el foro primario emitió una *Resolución y Orden Nunc Pro Tunc* en la que declaró con lugar la *Moción Urgente para Solicitar Remedios Provisionales al Amparo de la Regla 56 de Procedimiento Civil de 2009 y en Solicitud de Vista* presentada por los recurridos y ordenó así la prohibición de enajenar el inmueble de los peticionarios y la prestación de una fianza por la suma de $2,500.00 por parte de los recurridos dentro de un término de diez (10) días, tras concluir que los recurridos probaron una probabilidad de prevalecer en cuanto a que existe un contrato de promesa bilateral de compraventa y los peticionarios incumplieron el mismo.

Tras un minucioso análisis de la normativa relevante y los hechos particulares, así como la totalidad del expediente de este caso, denegamos intervenir con la determinación recurrida.  En primer lugar, los peticionarios arguyen ante nos que la propiedad en cuestión está cobijada por el derecho de hogar seguro y, por ello, no procede una prohibición de enajenar ni una sentencia en contra del inmueble en cuestión, al amparo de la Regla 56 de Procedimiento Civil, *supra.* Sobre esto plantea que, aunque el Artículo 5 de la Ley Núm. 195-2011, *supra,* no menciona las palabras "prohibición de enajenar", el Artículo 12 de dicha ley, *supra,* recoge la prohibición de enajenar de forma

general. Del Artículo 12 de la Ley Núm. 195-2011, *supra*, se desprende que se puede solicitar el beneficio del derecho de hogar seguro, "a partir del momento en que se solicita un embargo o anotación preventiva o cualquier otro mecanismo preventivo en aseguramiento de sentencia, en contra de las propiedades del demandado", entre otras instancias. Los peticionarios también alegan que la *Resolución y Orden Enmendada Nunc Pro Tunc* no asegura la efectividad de sentencia, pues el Artículo 5 de la Ley Núm. 195-2011, *supra*, protege a las propiedades sujetas a hogar seguro contra ejecuciones. Como veremos, no le asiste razón.

Como se expuso en la sección anterior, el propósito de la Ley Núm. 195-2011, *supra*, es proteger las residencias principales ante aquellas ventas promovidas por acreedores en virtud de sentencia o ejecución. Además, el Artículo 5 de la Ley Núm. 195-2011, *supra*, no menciona la prohibición de enajenar como una de las instancias protegidas por el hogar seguro. Nótese que no estamos ante una deuda reclamada por acreedores sino ante un negocio jurídico donde está en controversia si los peticionarios se obligaron a venderles a los recurridos la residencia en cuestión por la cantidad de $750,000.00. Por lo tanto, la protección brindada por la Ley Núm. 195-2011, *supra*, no aplica al caso de autos y el TPI no erró al dictar una orden de prohibición de enajenar la propiedad en cuestión, a tenor con la Regla 56 de Procedimiento Civil, *supra*.

Segundo, los peticionarios arguyen que la fianza impuesta a los recurridos para responder por los daños y perjuicios que se causen como consecuencia del aseguramiento es irrazonable. Sobre esto, los peticionarios plantean que la fianza impuesta a los recurridos ante la orden para anotar la prohibición de enajenar es insuficiente e irrisoria al prohibir la venta de su propiedad cuyo valor mínimo es de $750,000.00 y un valor máximo de $1.5 millones según el testimonio de la corredora de bienes raíces, Aileen Beale, por lo que, de prevalecer

los peticionarios sus daños podrían ser enormes y no estarían cubiertos por la cantidad de $2,500.00. No les asiste razón. Como expusimos en la sección anterior, la Regla 56.3 de Procedimiento Civil, *supra*, exige la prestación de una fianza suficiente para responder por todos los daños y perjuicios que se causen a causa del aseguramiento. Véase, además, *Citibank v. ACBI, supra*, pág. 734. Ahora bien, la determinación de su suficiencia es difícil. *Soc. de Gananciales v. Rodríguez, supra*, págs. 471-473. Tal y como ha determinado nuestro máximo foro en casos de embargos, la cuantía de la fianza siempre estaría sujeta a cambio, del demandado demostrar que el daño que el mantenimiento del embargo le causa excede el importe de esa fianza. Esto no ha ocurrido aquí. Así las cosas, carecemos de elementos que nos muevan a intervenir con la discreción del foro primario en cuanto a la cuantía de la fianza establecida.

Por último, no podemos concluir, en esta etapa, que el foro primario haya abusado de su discreción al ordenar la anotación de la prohibición de enajenación del inmueble puesto que, de concederse una sentencia a favor de los recurridos, posiblemente procedería la venta y entrega de la propiedad en cuestión por parte de los peticionarios. Véase Artículo 1235 del Código Civil de 2020, *supra*. Por tal razón, no podemos concluir que haya abusado de su discreción el TPI al tomar la referida medida provisional. Ahora bien, ello no prejuzga los méritos de una potencial solicitud de los demandados de desestimación de la demanda, por las alegaciones o por la vía sumaria, sobre la base del alcance jurídico y los efectos de la "Letter of Intent" o "Carta de Intención", en cada una de sus oraciones, asunto que tendrá que ser dirimido y adjudicado en primer término por el TPI.

Por todo lo anterior, resulta forzoso concluir que el TPI no erró al ordenar la anotación de prohibición de enajenación. Tampoco cometió error manifiesto al establecer la cantidad de la fianza que consideró adecuada.

**-IV-**

Por los fundamentos expuestos, denegamos la expedición del auto de *certiorari* solicitado.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones